UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

*In re*                                                                    Chapter 7

A & B MART & SERVICE, INC.                          Case No. : 15-70118-ast
BOHEMIA DEVELOPMENT CORP.                     Case No. : 15-70119-ast
CENTEREACH DEVELOPMENT CORP.             Case No. : 15-70120-ast
CORAM ASSOCIATES CORP.                              Case No. : 15-70121-ast
HAUPPAUGE DEVELOPMENT CORP.               Case No.: 15-70122-ast
NORTHPORT ENTERPRISES INC.                       Case No. : 15-70123-ast
VALLEY STREAM ENTERPRISES INC.             Case No. : 15-70124-ast

                                          Debtors.           (Jointly Administered)
-----------------------------------------------------------X

## AFFIDAVIT IN SUPPORT OF AUCTION SALE

STATE OF NEW YORK        )
                                             ) ss:.
COUNTY OF NASSAU          )

          Robert J. Tramantano, being duly sworn, deposes and says:

          1.      I am a one of the directors of Keen-Summit Capital Partners LLC, ("Keen-Summit"), the

duly retained Broker for Robert L. Pryor, the Chapter 7 Trustee (the "Trustee") of the above-captioned

estates. I make this affidavit in support of the approval of the auction sale ("Auction Sale") conducted on

May 8, 2015 in connection with this Court's Order entered April 3, 2015 [Docket No. 38] authorizing the

Trustee, *inter* alia, to sell substantially all of the assets of the Debtors free and clear of all liens, claims

and encumbrances and approving the Bidding Procedures. The Debtors assets included certain franchise

and lease agreements with Cumberland Farms, Inc. and its subsidiary, Gulf Oil Limited Partnership

(collectively "Cumberland").

          2.      I have been working with Keen-Summit and its predecessor firms for over 13 years and

have conducted numerous auction sales including, as this Court is aware, the auction sale of ten (10) of

the Debtors in the related chapter 11 Bankruptcy cases jointly administered under lead case Medford

Development Corp. Case No. 15-00000. By order dated March 25, 2015 this Court approved the auction

sales conducted by Keen in connection with those cases. As set forth below, the Auction Sale of the

Debtors in these Chapter 7 cases were conducted in a substantially similar fashion and should likewise be

1

approved by the Court.

3.    Keen-Summit has extensive experience and expertise in the analysis, marketing, disposition and settlement of claims relating to the business, real estate and leasehold interests of companies in bankruptcy proceedings.

4.    Keen-Summit was retained by Trustee pursuant to the Trustee's Amended Application for Order Approving the Retention Agreement of Keen-Summit Capital Partners LLC dated April 1, 2015 (the "Application") and the Order Authorizing the Retention of Keen-Summit Capital Partners LLC dated April 3, 2015 (the "Order") [Docket No. 36] to assist Trustee in the disposition and sale of the Debtor's lease and franchise agreements with Cumberland to operate various Mobil and Gulf gas station sites (the "Properties").

## KEEN-SUMMIT'S MARKETING AND DISPOSITION EFFORTS

5.    The following is a brief summary of Keen-Summit's marketing efforts with respect to the Properties:

A.    Broadcast Email Campaigns:

(i)    An email with the Flyer and Confidentiality Agreement was sent to all parties that had expressed interest in the Debtors' Chapter 11 sites on Tuesday, April 7 and again on Friday, May 1.

(ii)    Emails to subscribers of "Dealmaker's Forums" were disseminated to forum members on or about Monday, April 13.

(iii)    The Flyer was emailed to contacts in Keen's proprietary database on Monday, April 13 and again on April 23.

(iv)    An email was distributed to members of the Long Island Gas Retailers Association on Monday, April 13.

B.    Internet Listings:

(i)    The Properties were posted to Keen's website on Thursday, April 9.

2

        (ii)      The Properties were submitted to CoStar and Loopnet to be posted to their respective sites on Thursday, April 9.

        (iii)     The Flyer was sent to the Long Island Gas Retailers Association to be posted on its website on or about Monday, April 13.

C.      Signage announcing "Bankruptcy Auction" was installed at each of the Properties.

D.      In addition, Keen diligently followed up with all prospective bidders by phone, email and in in-person meetings to answer questions regarding the Properties and walk prospective bidders through the Court Approved Bidding Procedures.

## RESULTS OF KEEN-SUMMIT'S MARKETING AND DISPOSITION EFFORTS

6.     43 parties signed the Confidentiality Agreement in order to receive additional information inclusive of gas volumes at each of the Properties as well as copies of the lease and franchise agreements.

7.     At the May 5 Bid Deadline ten bids were presented covering five of the seven Properties. The high bid on each of the five Properties that received bids totaled $765,000.

8.     The Trustee, with Keen-Summit's assistance, deemed that all bids received were Qualified Bids.

9.     The auction was held on May 8 at which time additional bidding occurred, resulting in total high bids of $970,000, again, covering five of the Properties. The auction lasted approximately two (2) hours. Annexed hereto as **Exhibit A** is a spreadsheet setting forth the bid results for each of the Properties.

10.    In addition to the abovementioned five bids, the Hauppauge Development Property (the "Hauppauge Property") received a bid that was ultimately deemed to be unacceptable. The A&B Mart & Service Inc. property in E. Patchogue (the "A&B Property") did not receive any bids. Both the A&B Property and the Hauppauge Property were the only sites in the auction for which the fee-interest in the real estate is not owned by Cumberland. The A&B Property had very little lease term remaining (less

3

than one year) and the Hauppauge Development Property included less than five years remaining in current lease term. In addition, prospective bidders felt that the Hauppauge Property rent was too high. These factors deterred bidders from these two sites.

11.    As part of the Bidding Procedures the prospective bidders were asked to complete documentation and provide information sufficient to establish that the prospective bidder had the financial ability to perform under the franchise agreements and other agreements on which they were bidding and will be assigned to them by the Trustee.

12.    Additionally all prospective bidders were asked to complete documentation required by Cumberland to establish that they may operate a Cumberland franchise.

13.    It is my understanding that all of the successful bidders provided the necessary documentation and established that they had the financial ability to perform under the franchise and lease agreements with Cumberland and each were approved by Cumberland as well.

14.    Based on the foregoing, the Bankruptcy Court should approve the Auction Sale of the Debtors' Assets.


Dated:  Westbury, New York
        June 1, 2015


                                        _____
                                        Robert J. Tramontano

4